DAVID M. JOLLEY, #191164
djolley@donahue.com
DANIEL J. SCHACHT, #259717
dschacht@donahue.com
CORBAN J. PORTER, #270115
cporter@donahue.com
BEHNAM M PARVINIAN, #331944
bparvinian@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone:    (510) 451-3300
Facsimile:    (510) 451-1527

Attorneys for Passion Labs, LLC
and AiMi, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASSION LABS, LLC, a Texas limited liability company; and AIMI, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHANE GERVAIS, an individual; 9245-4628 QUEBEC INC., a Canadian corporation; and DOES 1-10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTION**<br><br>1. Breach of Contract<br>2. Breach of the Covenant of Good Faith and Fair Dealing<br>3. Intentional Interference with Prospective Economic Advantage<br>4. Unauthorized Access to Computer Data and Systems (Cal. Penal Code § 502)<br>5. Unfair Competition (Cal. Bus. & Prof. Code § 17200)<br>6. Declaratory Relief (17 U.S.C. §§ 101 *et seq.*)<br><br>**DEMAND FOR JURY TRIAL** |

4915-7048-0475.5

Case No.

COMPLAINT

Plaintiffs Passion Labs, LLC ("Passion Labs") and AiMi, Inc. ("AiMi," and together with Passion Labs, "Plaintiffs") state and allege as follows for their complaint against defendants Stephane Gervais ("Gervais"), 9245-4628 Quebec Inc. ("Quebec Inc."), and Does 1 through 10, inclusive ("Does" and together with Gervais and Quebec Inc., "Defendants"):

## THE PARTIES

1. Plaintiff Passion Labs is a Texas limited liability company. Passion Labs incorporates AiMi technology into audiovisual media.

2. Plaintiff AiMi is a Delaware Corporation founded in 2019. AiMi was initially headquartered in San Francisco, California. In 2024, AiMi moved its headquarters to Austin, Texas. AiMi is an artist-friendly AI music company that provides its users with the ability to enjoy and create music based on sounds that AiMi curates, licenses and commissions.

3. AiMi and Passion Labs are two of several companies under the umbrella of Endanik, LLC.

4. On information and belief, Defendant Gervais is, and at all times relevant to this action has been, an individual who resides in Quebec, Canada.

5. On information and belief, Defendant Quebec Inc. is a Canadian corporation. On information and belief, Gervais is the sole owner of Quebec, Inc. and uses it as a "loan out" company for his services to minimize tax liability.

## JURISDICTION

6. The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), insofar as it arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, including by requiring the interpretation of the Copyright Act as to the ownership of certain works.

7. Alternatively, the Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) insofar as it is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8. The Court has supplemental jurisdiction of the State law claim pursuant to 28 U.S.C. § 1367(a) insofar as it is so related to the federal claim in this action that it forms part of the case or controversy under Article III of the United States Constitution.

## VENUE

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein , as well as substantial injury to Plaintiffs, have occurred or will occur in interstate commerce, in the State of California, and in the Northern District of California as a result of Defendants conduct as alleged herein. Venue is also proper in the Northern District of California in that the parties contractually agreed to such venue. Specifically, Section 17 of the Project Agreement between AiMi and Quebec, Inc. for the services of Gervais (attached as Exhibit A), states that venue for legal actions arising from the agreement, and specifically intellectual property disputes, shall be situated in San Francisco, California and/or the Northern District of California, and the Parties irrevocably consented to the jurisdiction of this Court.

## DIVISIONAL ASSIGNMENT

10. Pursuant to Civil L.R. 3-2(c) this action shall be assigned to the San Francisco Division or the Oakland Division because a substantial part of the events or omissions giving rise to the claims occurred in the City and County of San Francisco.

## FACTS

11. In 2019, AiMi entered into an agreement with Quebec, Inc., for the services of Gervais, entitled "Project Agreement." A copy of the Project Agreement is attached hereto as Exhibit A. In addition to signing on behalf of Quebec, Inc., Gervais personally signed an Acknowledgement as part of the Project Agreement, acknowledging that he was granting all ownership to any work created from his services to AiMi.

12. Starting no later than 2020, the parties agreed to expand the scope of the Project Agreement to cover additional services by Gervais, including for Passion Labs. Defendants were generally paid on a monthly basis, after submitting invoices. Starting in August 2023, AiMi also paid Defendants in stock options.

13. All of the agreements and amendments between the parties that relate to this lawsuit, including the Project Agreement, as amended, were entered into in San Francisco, California, where AiMi was headquartered through the end of 2024.

14. On or about May 2, 2025, as part of a patent application and confirming the parties' agreement, Gervais signed an assignment of his entire worldwide right, title and interest – to the extent not already owned by Plaintiffs – to the Storyboard technology to Passion Labs.

15. One of Plaintiffs' projects for which AiMi engaged Gervais' services pursuant to the Project Agreement, as amended, was called "VJ Live" or, alternatively, "Storyboard" (hereinafter, "Storyboard"). Storyboard involved incorporating AiMi's music generating capabilities with AI-generated visual art that uniquely synchronizes the two elements. Storyboard is intended for use in smaller platforms, such as phones, but also live theater settings and spaces with multiple large high-definition video screens, including a "Passion Theater" built by Plaintiffs specifically for Storyboard. The Storyboard app has two components: a service that generates live streams of images based on prompts and an application that lets users send prompts to the service.

16. Though still in development, Storyboard was functioning as intended prior to July 27, 2025. Plaintiffs could demo Storyboard both remotely, including on Zoom calls with prospective customers, and in Plaintiffs' Passion Theater. On or about July 19, 2025, Defendants confirmed that the Storyboard demo was working as intended, after Defendants had, at Plaintiffs' direction, ported the application to a new internet domain.

**Defendants' Failure to Fulfill Their Deliverable**

17. Starting in 2024, Plaintiffs had instructed Defendants to further develop Storyboard so that it could run an executable code on the cloud. Defendants' responsibility was to develop the Storyboard code in a way for the generative visual application to functionally run on the cloud. Defendants were late in providing this functionality, but led Plaintiffs to believe Gervais was a qualified programming code developer capable of achieving this result in a timely manner. It was not until after Gervais sabotaged an important pitch meeting scheduled for July 29, 2025, that Plaintiffs discovered the real damage Defendants' misrepresentations had caused. In reality, Gervais was not a developer possessing the necessary skills or qualifications to create and run the Storyboard code as he had promised to do. Gervais deliberately acted in a way for Plaintiffs not to suspect that Storyboard would not be ready for presentation as a workable product, actively leading them to believe that he was making progress towards its development.

18.     Plaintiffs are informed and believe, and thereon allege that despite having made reassurances to the contrary, Gervais was unable to develop and run the Storyboard code on the cloud. Far worse, Plaintiffs now realize that the Storyboard code was nowhere near the point Defendants had previously represented to them. Rather than being a nearly-complete, executable code as would ordinarily be developed by a professional with manual programming and coding input, Plaintiffs discovered that the Storyboard code that Gervais had developed incorporated third-party code, in violation of the Project Agreement, and was heavily reliant on a specific visual development platform which can be used for demo purposes, but needs significant further work to upgrade the code to the functionality that Defendants had agreed to provide. Upon information and belief, notwithstanding his representations about his coding and programming capabilities, Gervais was relying on Claude and other artificial intelligence tools as well as TouchDesigner to develop the Storyboard code. TouchDesigner is an example of a "node-based" visual programming language whereby functional units are graphical "nodes" rather than "textual codes" commonly used in developing operative visual applications.

19.     In using and relying on the aforesaid tools, Defendants caused substantial damage to Plaintiffs in two interrelated ways: First, Defendants circumvented the actual process of writing code, which was required of them and was of essence in developing a workable code for a fully functioning stand-alone Storyboard. Second, Defendants created a demonstrative version of the Storyboard code speciously designed to resemble a functioning visual application, which was only an act of deception, and, contrary to Defendants' representations, not usable without significant manual efforts.

**Defendants Sabotage a Pitch Meeting, Hack Plaintiffs' Accounts, and**

**Disable Plaintiffs' Technology**

20.     Plaintiffs are informed and believe, and thereon allege that when Defendants realized that they would not be able to deliver as promised; that Plantiffs would not have a workable, cloud-enabled product to show at an important pitch meeting for a prospective client scheduled for July 29, 2025; and that their misrepresentations about the progress made on the development of the

1 Storyboard code would be revealed to Plaintiffs, Defendants began an extensive process of data destruction and account manipulation.

21. On or before July 28, 2025, without warning, and fully aware of the important meeting scheduled for the next day, Gervais sabotaged the pitch meeting, hacked AiMi and Passion Labs' accounts and changed their passwords and account emails, disabled their access to important accounts, and disabled access to the Implicit code.

22. AiMi was scheduled to make its initial pitch of Storyboard to a potential customer on Tuesday, July 29, 2025, in Austin, Texas. This included showing the then-current demo version of Storyboard on the customer's video screens. Gervais was scheduled to arrive on July 27, 2025, to be able to attend the meeting and prepare the demonstration.

23. On July 26, 2025, Gervais first suggested that he would not only terminate his services, but sabotage Plaintiff's work. In a text message to Plaintiffs' CEO, Gervais stated that "it's time to pull the trigger" and "You know what I'm heading for here. Bad Times":



24. Unfortunately, Gervais' statements that "I'm not going to do stupid moves on my side." and "I will close clean." were false and deliberately misleading.

25. On July 27 and 28, 2025, without warning, and fully aware of the important pitch meeting scheduled for the next day, Defendants sabotaged the pitch meeting, hacked AiMi and

Passion Labs' accounts and changed their passwords and account emails, disabled their access to important accounts, and disabled Storyboard.

26. On July 28, 2025, Gervais sent a letter (the "Letter") entitled "Termination of Services" to Edward Balassanian, the CEO of Endanik, AiMi, Passion Labs, and other Endanik companies. A copy of the letter is attached as Exhibit B.

27. The Letter falsely claims that Gervais is owed money. As of August 5, 2025, neither Plaintiffs nor any other Endanik company has received an invoice from Defendants that has not been paid. Indeed, Defendants had agreed to invoice for services no sooner than late August 2025.

28. Gervais claims in the Letter, "As a final professional courtesy, and to leave the system in a working state, I am providing access for you to use the currently deployed versions[.]" This is deceptive, misleading, and entirely untrue. In reality, Defendants left the servers for the Passion Theater in a crippled state. The routing information was incorrect with routes pointing to the wrong machines, with an inconsistent setup of services. In addition, the servers were unusable for the visual element of Storyboard because they relied on AWS, and Defendants locked Plaintiffs out of their own AWS account.

29. Gervais states in the Letter that Plaintiffs "are hereby requested to **back up all necessary data**, and to **remove or disable all administrative accounts, credentials, and payment methods under my name** including but not limited to: Google Workspaces, Groq API Keys, OpenAPI, Claude.ai, GitHub, Slack, GoDaddy delegate access, Unifi Network Administration, local servers, ADT, 1Password, and any others related to Endanik, Aimi, Passion Group, Passion Labs, Passion Flower, or Implicit Media, **within the next five (5) days** from the date of this notice." Gervais also threatens to, within five days from the date of his Letter, "shut down" all accounts that he administers for Plaintiffs, "including the main AWS server instance"; Gervais threatens that "all associated accounts and credentials will be disabled or deleted, without further warning." He mockingly tells Plaintiffs to "Please ensure you have completed all necessary backups and copies from these systems prior to this date," knowing full well that this is impossible *because Gervais has changed the passwords to these accounts and changed the account emails to his own*, preventing Plaintiffs from accessing them, much less making backups and copies.

30. Defendants misrepresented to Plaintiffs that they would be able to access and transfer these vital accounts. In reality, Defendants knew that they were the owner, or "super admin," of the account and Plaintiffs were only regular admins, meaning that only Defendants, and not Plaintiffs, had the administrative rights to change the owner and transfer administrative rights to another.

31. On or about July 27, 2025, Gervais changed the password and account email to Plaintiffs' password management system, 1Password. With this, Gervais had access to all of Plaintiffs' passwords. Below is a screenshot of an email from 1Password to Plaintiffs' CEO, July 28, 2025.



.

32. Fortunately, and despite Defendants' efforts, Plaintiffs were able to work with 1Password to restore access to their account.

33. On or about July 27, 2025, Gervais also changed the email address associated with Passion Labs' Amazon Web Services ("AWS") account to his own email (admin@g2x.ca) and

changed the password, as shown below. Broadly speaking, AWS provides its users cloud computing platforms that include a multitude of services, such as storage, application services, and software tools. Prior to July 27, 2025, Plaintiffs' AWS account access allowed Storyboard to run effective demos. Storyboard does not function without access to Plaintiff's AWS account. Unfortunately, Plaintiffs have been unable to regain access to the AWS account.

> From: account-update-no-reply via Services <services@passion.llc>
> Subject: Your Amazon Web Services Account Email Has Been Updated
> Date: July 27, 2025 at 2:45:14 PM CDT
> To: services@passion.llc
> Reply-To: account-update-no-reply@signin.aws
>
> Greetings from Amazon Web Services,
>
> As you requested, the email address associated with your AWS account has been updated.
>
> Old email address: services@passion.llc
>
> New email address: admin@g2x.ca
>
> To view or edit your account settings, please visit the "My Account" page at
>
> https://console.aws.amazon.com/billing/home?#/account.
>
> For help and support, visit the AWS Support Center at https://aws.amazon.com/contact-us.
>
> Thank you for using Amazon Web Services.
>
> Sincerely,
> The Amazon Web Service Team

34.     Contrary to the agreement of the parties, including the Project Agreement and the May 2, 2025 assignment signed by Gervais, and contrary to governing law, Defendants claim in their Letter to have sole ownership and control of the work they created for Plaintiffs, including Storyboard, and threaten Plaintiffs with litigation in Canada should they use the work that is, by right and agreement, theirs.

35.     After the Letter, Gervais continued to claim, falsely, to Plaintiffs in text messages that he had deleted no files and had not sabotaged the last demo version of Storyboard. Below is one such exchange, with Plaintiffs' CEO's texts on the right and in blue, and Gervais' text on the left and in grey[1]:

---

[1] This consists of multiple screenshots, cropped – without cutting anything between the first and last messages shown – to show the conversation as one exchange. The "Edited" note in the texts refers

[Screenshot of iMessage conversation with Stephane showing notifications about Aimi account deletion and 1Password subscription cancellations, followed by messages: "Patrick just slacked me saying his account was deleted as well." "Also, why has the email for passion at aws been changed to your personal email? If you need to remove yourself please let me do it so I can take over as owner." "I logged out my account. And kicked my sessions. I am not removing or csncelokng subscriptions." "Both Aimi and the Strings 1 password accounts were deleted."]

---

to the use of the iMessage feature that allows users to correct typos or make other changes up to five times within fifteen (15) minutes of sending the text. *See* How to Edit Messages on Your iPhone (https://support.apple.com/en-us/105083, last visited August 6, 2025).

> Can we please take a deep breath and slow down. I understand you want out and I'm not going to try to talk you out of it but there's no reason to start deleting and canceling accounts precipitously.
>
> Hey that was not the intention. I have not deleted my account and didn't intended to delete everything. That would've been just stupid
>
> Why don't we get on a call tomorrow and go over everything that needs to be unwound. We can do it methodically and make sure that any accounts that need to be transferred or done so properly

36.     Since at least July 28, 2025, due to Defendants' unlawful sabotage, Plaintiffs have been unable to use Storyboard in any fashion. Plaintiffs cannot demo Storyboard to potential customers via Zoom calls and the Passion Theater is rendered useless, unable to showcase Storyboard.

37.     Unfortunately, Defendants refused Plaintiffs' overtures to resolve the matter amicably and short of litigation.

38.     Defendants have suffered economic harm as a result of Defendants' actions, in the form of lost revenue, mitigation costs, and payments made to Defendants for services never provided, all in amounts to be determined.

39.     Plaintiffs have no adequate remedy at law for their injuries currently being suffered or injuries they will suffer due to Defendants' actions.

40.     Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiffs' ability to attract and retain clients.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

41.     Plaintiffs re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

42.     AiMi entered into the Project Agreement, as amended, with Defendants in order to, among other things, obtain a functioning, cloud-based Storyboard app.

43. AiMi has substantially performed all obligations required of it under the Project Agreement, or such obligations have been waived.

44. Defendants, together and/or individually, have breached the Project Agreement by refusing and continuing to refuse to provide the agreed-upon coding and other services for Storyboard and instead sabotaged the existing demo version of the Storyboard.

45. AiMi has been significantly harmed by Defendants, together and/or individually, relating to their breach of the Project Agreement.

46. Defendants' breach of the Project Agreement is a substantial factor in causing AiMi's harm.

WHEREFORE, AiMi seeks relief as set forth below.

## SECOND CLAIM FOR RELIEF

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

47. Plaintiffs re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

48. AiMi entered into the Project Agreement, as amended, with Defendants.

49. AiMi did all, or substantially all, of the significant things that the Project Agreement required it to do or was excused from having to do those things.

50. All conditions required for Defendants' performance had occurred or were excused.

51. Defendants prevented AiMi from receiving the benefits of the Project Agreement, including through their acts of sabotage as described above and, by doing so, did not act fairly and in good faith.

52. AiMi has been significantly harmed by Defendants' conduct.

WHEREFORE, AiMi seeks relief as set forth below.

## THIRD CLAIM FOR RELIEF

**(Intentional Interference with Prospective Economic Advantage)**

53. Plaintiffs re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

54. Plaintiffs had economic relationships with potential clients for Storyboard that likely would have resulted in an economic benefit to Plaintiffs. Defendants were aware of those relationships, intended to disrupt those relationships, and did in fact disrupt those relationships through the actions described above, including intentionally sabotaging the Storyboard demo days prior to an important pitch meeting.

55. As a direct and proximate result of this disruption of business opportunities, Plaintiffs has suffered injury and harm, and, on information and belief, Defendants have been unjustly enriched, in amounts according to proof but in excess of the minimum jurisdiction of this Court.

56. Defendants performed the foregoing acts, conduct and omissions fraudulently, maliciously, and oppressively, with the intent and design to damage Plaintiffs. By reason of this conduct, Plaintiffs are entitled to recover punitive damages in an amount to be determined at the time of trial.

WHEREFORE, Plaintiffs seek relief as set forth below.

**FOURTH CLAIM FOR RELIEF**

**(Unfair Competition)**

57. Plaintiffs re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

58. Section 17200 of the California Business and Professions Code provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

59. Defendants' actions and omissions complained of herein were and are unlawful, unfair, and fraudulent and thus, those actions and omissions amount to a violation of Section 17200 of the California Business and Professions Code.

60. As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and will continue to suffer and/or is likely to suffer damage to its business, its business reputation, and goodwill. Defendants will continue, unless restrained, use the intellectual property developed pursuant to the Project Agreement improperly, and deceptively, and will unfairly market, advertise and promote their services. This will cause irreparable damage to Plaintiffs. Plaintiffs

have no adequate remedy at law. Plaintiffs are entitled to an injunction restraining Defendants, and their respective officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in further acts of unfair competition.

WHEREFORE, Plaintiffs seek relief as set forth below.

## FIFTH CLAIM FOR RELIEF

**(Unauthorized Access to Computer Data and Systems (Cal. Penal Code § 502))**

61. Plaintiffs re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

62. California Penal Code Section 502 provides for the imposition of criminal fines and/or imprisonment against any person who commits, among other things, the following acts:

    a. "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system or computer network in order to (A) devise or execute any scheme or artifice to defraud, deceive or extort, or (B) wrongfully control or obtain money, property or data"; or

    b. "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network"; or

    c. "[k]nowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation" of Section 502; or

    d. "[k]nowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network."

63. In addition to imposing criminal penalties, Section 502(e)(1) permits the "owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss" by reason of any violation of Section 502 to bring a civil action for compensatory damages, injunctive relief or other equitable relief. Section 502(e)(2) further permits the Court in such a civil action to award reasonable attorneys' fees.

64. At all times relevant herein, Plaintiffs owned the computers, computer systems, computer network, data and access to external platforms now at issue.

65. As set forth above and incorporated herein, Defendants conspired and agreed amongst themselves to knowingly and unlawfully access, or cause to be accessed, computers, computer systems, the computer network, data and access to owned by Plaintiffs, including but not limited to accessing its passwords on various platforms, to unfairly, unlawfully, and fraudulently restrict Plaintiffs' access to said platforms, which constitutes valuable and confidential data contained in said computers, computer systems or computer networks. Plaintiffs are informed and believe that Defendants did so knowingly, without Plaintiffs' permission, and with the intent to, among other things: (i) wrongfully control or obtain data; (ii) wrongfully copy and use the computer data for the benefit of themselves; (iii) wrongfully delete or destroy the data and/or (iv) wrongfully restrict Plaintiffs; access to information and data to cause Plaintiffs harm.

66. Defendants' unauthorized access to Plaintiffs' computer systems, data and access to external platforms, was not carried out within the course and scope of Defendants' employment for Plaintiffs the Defendants were not accessing said information in order to perform acts that were reasonably necessary to the performance of their work assignments for Plaintiffs.

67. Defendants did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and agreement alleged above. Plaintiffs have been damaged as a result of Defendants' violations of Section 502 in an amount to be proven at trial, but believed to be well in excess of the minimum jurisdiction of this Court. Plaintiffs damages include but are not limited to the considerable expenses it was and will be forced to incur to verify that its computer systems, data and access to external platforms, were or were not altered, deleted, damaged, or destroyed as a result of Defendants' unlawful access as well as the costs and time necessary to regain access to said information.

68. Defendants have been unjustly enriched as a result of their violations of Section 502, in an amount to be proven at trial that is well in excess of the minimum jurisdiction of this Court. Under Penal Code Section 502, Plaintiffs are entitled to an award of damages against Defendants

for injuries suffered to date by Defendants unlawful access as well as equitable relief or restitution for unjust enrichment by Defendants.

69. Defendants' conduct was willful and malicious, and performed with the intent to do harm. Therefore, under Penal Code Section 502(e)(4), Plaintiffs are entitled to an award of punitive and exemplary damages. In addition, under Penal Code Section 502(e)(2), Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs incurred in pursuing this cause of action against Defendants.

WHEREFORE, Plaintiffs seek relief as set forth below.

## SIXTH CLAIM FOR RELIEF

**(Declaratory Relief Regarding Ownership of Plaintiffs' Intellectual Property)**

70. Plaintiffs re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

71. An actual and justiciable controversy has arisen and now exists between Plaintiffs and Defendants as to what rights, if any, Defendants have in and to the intellectual property, including copyrights and patent rights in Storyboard, owned by Plaintiffs pursuant to the terms of Project Agreement, as amended, and the May 2, 2025 assignment (the "Intellectual Property").

72. In light of the conduct alleged herein, and the apparent belief by Defendants that they have the rights to the Intellectual Property, the dispute between Plaintiffs and Defendants is definite, immediate and substantial.

73. Defendants actions as alleged herein have caused uncertainty regarding the Intellectual Property, and the rights thereto, of Plaintiffs and Defendants. This uncertain includes whether any parties' purported rights to the use the Intellectual Property is authorized and in accordance with the Project Agreement, the May 2, 2025 assignment, or other agreement of the parties.

74. By this Complaint, Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C.§ 2201(a) that Defendants have no rights to the Intellectual Property and no right to use or license the Intellectual Property to third parties.

75. Plaintiffs are entitled to a declaratory judgment of their rights under 28 U.S.C. § 2201 in order to resolve the dispute existing between the parties and afford relief from the uncertainty and harm that Defendants' actions have caused.

WHEREFORE, Plaintiffs seek relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following:

NOW, THEREFORE, Plaintiffs pray for judgment and relief against Defendants as follows:

1. Actual damages in an amount to be proven at trial, but in excess of this Court's minimum jurisdictional requirements;

2. Restitution and disgorgement of Defendants' unjust enrichment, in an amount to be proven at trial, but in excess of the jurisdictional requirements;

3. Punitive and exemplary damages, and any other damages authorized by law;

4. For an Order enjoining Defendants from directly or indirectly:

   a. Accessing, retrieving, copying, deleting, destroying, altering, or disseminating any hard or electronic copies of documents containing Plaintiffs' confidential and proprietary information; and/or

   b. Obtaining, using, or disclosing for any purpose whatsoever any of any confidential and proprietary information belonging to Plaintiffs;

5. For an Order directing Defendants to return all of Plaintiffs' property in their possession, custody or control; and to restore all passwords to internal and external platforms consistent with Plaintiffs' normal operative procedures.

6. For prejudgment and post-judgment interest at the maximum legal rate, as provided by California law, as applicable, as an element of damages which Plaintiffs have suffered as a result of Defendants' wrongful and unlawful acts;

7. For reasonable attorneys' fees and costs incurred herein as allowed by law; and

8. For such other relief as the Court deems just and proper.

1 **DEMAND FOR JURY TRIAL**

2     Plaintiffs Passion Labs, LLC and AiMi, Inc. respectfully demand trial by jury of all issues
3 and claims as to which there is a right of trial by jury.

4

5 Dated: August 7, 2025              DONAHUE FITZGERALD LLP
                                            Attorneys at Law
6

7
                                            By: _____
8                                                  David M. Jolley
9                                                  Daniel J. Schacht
10                                                 Corban J. Porter
                                                Behnam M Parvinian
11                                                 DONAHUE FITZGERALD LLP
                                                Attorneys for Passion Labs, LLC and AiMi, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28