1
2
3
4
5
6
7                                UNITED STATES DISTRICT COURT

8                              NORTHERN DISTRICT OF CALIFORNIA

9

10    PASSION LABS, LLC, et al.,                    Case No.  25-cv-06672-RS

              Plaintiffs,
11
                                                   **ORDER DENYING MOTION FOR *EX***
12         v.                                      ***PARTE* TEMPORARY RESTRAINING**
                                                   **ORDER**
      STEPHANE GERVAIS, et al.,
13
              Defendants.
14

15                                       **I. INTRODUCTION**

16          Plaintiffs Passion Labs LLC and AiMi, Inc. seek a temporary restraining order ("TRO")

17    against Defendants Stephane Gervais and 9245-4628 Quebec, Inc. over allegations of contractual

18    breaches and the hacking of important business and technological accounts.  For the reasons

19    explained below, the motion for a TRO is denied.

20                                        **II. BACKGROUND**

21          In 2019, Plaintiff AiMi contracted with Quebec Inc. for the services of Gervais, a computer

22    programmer.  *See* Compl., Ex. A, Dkt. No. 1-1 ("Project Agreement").  According to a declaration

23    filed by AiMi's founder, president and CEO, Edward Balassanian, Defendants agreed to expand

24    the scope of the services Gervais provided starting in 2020, "as shown through the parties' course

25    of dealing."  Balassanian Decl., Dkt. No. 5 ¶ 5.  The Project Agreement attached to the complaint

26    states that Gervais would be paid a fee set forth in an "Exhibit A" that Plaintiffs did not include

27    with their filings, so it is unclear how much Plaintiffs agreed to pay Defendants for their services.

28    What is clear from the agreement, however, is that, to the extent any intellectual property rights

United States District Court
Northern District of California

might have inured to Defendants, those rights were transferred to Plaintiffs.  Project Agreement ¶ 3.  The contract also provides that "monetary damages would not be an adequate remedy if [Gervais] breaches any provision of this Agreement which protects [Plaintiffs'] intellectual property and other proprietary rights" such that Plaintiffs are entitled "to a stipulated temporary restraining order, and shall thereafter be entitled to apply for a preliminary injunction" or other equitable relief, *id.* ¶ 11, with venue appropriate in the Northern District of California federal court, *id.* ¶ 17.

One project Defendants were hired to produce is called "VJ Live" or "Storyboard," a program which incorporates AiMi's music-generating capabilities with AI-generated visual art that synchronizes the two elements.  Storyboard is intended for use on smaller platforms like phones, but it can also suit live theater settings, including a "Passion Theater" that Plaintiffs built specifically for its use.  *See generally*, Ex Parte App., Dkt. No. 5 at 2.

As recently as last month, Storyboard "was functioning as intended," despite still being in developmental stages.  *Id.*  Plaintiffs could demonstrate the program remotely over Zoom with prospective customers and in person at the Passion Theater.  Defendants confirmed to Plaintiffs that Storyboard was working as intended on July 19, and Plaintiffs anticipated demonstrating it for a prospective client on July 28, 2025.

On July 26, things went sideways.  Gervais texted Balassanian, stating "Financial situation came out and is known.  So it's pretty much over for me. Everything will cancel on my side.  This also means I am also done.  I will have to close our books and it's time to pull the trigger."  *Id.* at 3.  Over the next two days, Defendants allegedly "sabotaged the pitch meeting, hacked AiMi and Passion Labs' accounts and changed their passwords and account emails, disabled their access to important accounts, and disabled Storyboard."  Compl. ¶ 25.  Although Plaintiffs were able to restore access to some of the accounts, they remain unable to access the account they use for cloud computing through Amazon Web Services ("AWS").  Without that access "Storyboard does not function."  *Id.* ¶ 33.

In a termination email sent July 28, Gervais told Balassanian that "[d]espite a verbal

1    agreement for monthly compensation, only a single payment of $5,000 has been received, making

2    continued involvement unsustainable." *See* Compl., Ex. B, Dkt. No. 1-2 ("Termination Email").

3    Gervais also represented that "[a]s a final professional courtesy, and to leave the system in a

4    working state, I am providing access for you to use the currently deployed versions." *Id.*  At the

5    end of the letter, Defendants claimed that "all intellectual property, source code, and unreleased

6    developments remain my sole property." *Id.*

7        Balassanian declares that Defendants were paid monthly based on invoices they submitted.

8    Payments went to Quebec Inc., which he believed to be Gervaise's corporate alias.  Balassanian

9    Decl. ¶ 7.  AiMi also paid Gervais in stock options starting in August 2023.  *Id.* ¶ 8.  In May 2025,

10   Gervais assigned his entire worldwide right, title and interest (to the extent not already owned by

11   Plaintiffs) in the Storyboard technology to Passion Labs.  *See* Balassanian Decl., Ex. 1

12   ("Assignment").

13       The scheduled July 29 meeting "was an embarrassing disaster."  Balassanian Decl. ¶ 24.

14   "However, that potential client has agreed to give [Plaintiffs] another opportunity if we are able to

15   have Storyboard up and running by August 20 . . . In order to get Storyboard functioning for this

16   demo, [Plaintiffs] need immediate access to our AWS account and the code and servers restored to

17   the way they were immediately before Gervais sabotaged them." *Id.*  Apparently, the program

18   currently runs "a constant non-sensical loop showing images of green witches standing around a

19   kettle." *Id.* ¶ 16.

20       Plaintiffs subsequently filed this lawsuit, averring claims of breach of contract, breach of

21   the implied covenant of good faith and fair dealing, intentional interference with prospective

22   economic advantage, unfair competition, and unauthorized access to computer data and systems.

23   Without a temporary restraining order, Plaintiffs claim they will suffer immediate and irreparable

24   harm in the form of "a loss of potential customers and potentially the loss of the first-to-market

25   advantage." Ex Parte App. at 8–9.  "Having the Storyboard application non-operational will set

26   Plaintiffs' development back a month or more, and will certainly result in irreparable harm to

27   Plaintiffs and their position in the marketplace." *Id.* at 9.

28

ORDER DENYING MOTION FOR TRO
CASE NO. 25-cv-06672-RS

United States District Court
Northern District of California

### III. LEGAL STANDARD

The standard for issuing a temporary restraining order effectively mirrors the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). "A plaintiff seeking [such relief] must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

While the standards are similar, a temporary restraining order operates on a different timeframe than a preliminary injunction. The latter remains in effect pending final resolution of the dispute, whereas "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

Under Federal Rule of Civil Procedure 65(b)(1), a TRO may issue without notice to the opposing party (i.e., *ex parte*) only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

### IV. DISCUSSION

Plaintiffs have not satisfied the requirements for issuing an *ex parte* temporary restraining order. To be sure, Counsel's submissions demonstrate substantial efforts to give notice of this

ORDER DENYING MOTION FOR TRO
CASE NO. 25-cv-06672-RS

United States District Court
Northern District of California

1    case and TRO request to Defendants, satisfying Rule 65(b)(1)(B).  Indeed, it appears that

2    Defendants were properly served with the court's order requiring responsive briefing by August

3    14, 2025.  *See* Dkt. No. 11 (counsel declaration stating, under penalty of perjury, that on August

4    12 a process server had given notice that it personally served on Defendants the summons,

5    complaint, TRO pleadings, and the August 8 order on Defendants).[1]  August 14 has come and

6    gone, suggesting Defendants are not going to respond in a timely matter.

7         Based on the averments in the complaint and the motion, however, it is not sufficiently

8    clear that immediate and irreparable injury, loss, or damage will result to Plaintiffs without

9    imminent court action.  *See* Rule 65(b)(1)(A).  The sought-after injunctive relief is for an order

10    directing, *inter alia*, Defendants to return all of Plaintiffs' property, reinstate Plaintiffs' control of

11    all passwords (including as to the AWS account), and restore the product so that it will function as

12    it did prior to the challenged conduct that began on July 28.  Yet, Plaintiffs' claimed imminent

13    injury is the potential loss of a first-to-market advantage related to an upcoming client meeting.

14    Therein lies a disconnect—even if the requested injunctive relief is granted, it does not necessarily

15    mean the claimed injury will be prevented.  To the contrary, Plaintiffs could secure all the

16    injunctive relief they seek and still lose out on first-to-market advantages or the potential business

17    of a client.  In this respect, Plaintiffs' bid for relief is quite unlike the standard TRO motion.  The

18    immediate and irreparable harm asserted here appears as likely to occur regardless of the

19    imposition of injunctive relief, which means the causal nexus is insufficient to meet the relevant

20    standard.  *See* Rule 65(b)(1) (permitting *ex parte* TROs "only if . . . specific facts in an affidavit or

21    a verified complaint *clearly* show that immediate and irreparable injury, loss, or damage *will result*

22    to the movant before the adverse party can be heard in opposition") (emphasis added).  Because

23    the facts averred do not clearly show that the necessary degree of injury, loss, or damage will

24

---

25    [1] Counsel's declaration stated that proof of service would be filed upon receipt of the affidavit of
26    service from the process server.  No proof has yet been filed, and Plaintiffs are advised to do so at
     the earliest opportunity.  Considering counsel's sworn declaration, it is peculiar that three days
27    have passed with no affidavit of service appearing on the docket.  In any event, no affidavit having
     been filed, the analysis here remains under the rubric of Rule 65(b).

28

result without immediate court intervention, an *ex parte* order in this case is inappropriate.

## V. CONCLUSION

Plaintiffs' motion for a temporary restraining order is denied.  Plaintiffs' request for a preliminary injunction shall be heard on September 4, 2025, at 2:30 pm via remote proceedings on Zoom.  An opening brief may be filed on or before August 22, and a responsive brief, if any, may be filed on or before August 29.  A reply brief, if any, may be filed on or before September 2.

**IT IS SO ORDERED**.

Dated: August 15, 2025

RICHARD SEEBORG
Chief United States District Judge